# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DAVID WATTIE-BEY,

      Plaintiff,

      v.

MODERN RECOVERY
SOLUTIONS,

      Defendant.

CIVIL ACTION NO. 1:14-CV-01769

(CONNER, J.)
(SAPORITO, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

This is a *pro se* action brought by plaintiff David Wattie-Bey against

defendant Modern Recovery Solutions ("MRS"), seeking statutory damages

for alleged violations of the Telephone Consumer Protection Act ("TCPA"),

42 U.S.C. § 227, and the Fair Debt Collections Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.*, and compensatory damages for the common-law tort

of intrusion upon seclusion. In his complaint, Wattie-Bey alleged that the

defendant utilized an "automatic telephone dialing system" to place two

"hang-up" phone calls to his cellphone within a one-minute period, that it

caused his telephone to ring repeatedly with intent to annoy, abuse, or

harass him, that it failed to meaningfully disclose its identity when placing

those hang-up calls, and that it intruded upon Wattie-Bey's solitude or

seclusion in doing so. The defendant has moved for summary judgment.

## I.  FACTUAL BACKGROUND

The material facts of this case are largely undisputed.

Prior to March 6, 2014, an account was placed with MRS for collection. This account was not in Wattie-Bey's name, but the phone number provided to MRS was Wattie-Bey's cellphone number.

On March 6, 2014, at approximately 1:41 p.m., MRS called Wattie-Bey's cellphone. The call was placed by an MRS employee who dialed the phone number manually on MRS's NEC SV8100 phone system.[1] Wattie-Bey answered the call but was greeted with silence. He said "hello" repeatedly, but no one answered, and the call ended.[2] Caller ID on his

---

[1] In his opposition brief, Wattie-Bey disputes that the call was made "manually," arguing that the phone system was capable of autodialing, and thus, as a matter of law, the call could not have been "manually" placed. He has cited nothing in the record, however, to contradict the affidavits submitted by MRS that unequivocally state that the phone call was placed manually and that the MRS phone system is not capable of making autodialed phone calls. (Doc. 15-2, at 2; Doc. 32-3, at 2). *See generally* Fed. R. Civ. P. 56(c)(1).

[2] Wattie-Bey initially contended that the caller hung up without identifying herself. (Doc. 1, at 6; Doc. 32-1, at 18–19). MRS asserted in response that there was a connection problem, and that Wattie-Bey and the MRS caller simply could not hear each another. (Doc. 32-1, at 18–19). Wattie-Bey has subsequently conceded that the first call was "a connected call with bad reception." (Doc. 16-2, at 18).

cellphone displayed MRS's phone number, without a name.

Within a minute, Wattie-Bey received a second call from the same phone number, as identified by his cellphone's caller ID feature. He answered the call but once again found no one on the line.[3]

At 1:43 p.m., Wattie-Bey placed a return call to the phone number displayed by his cellphone's caller ID function. Wattie-Bey spoke with an MRS employee, whom he advised that he had just received a call from that number. The MRS employee asked Wattie-Bey if he knew the person they were trying to contact. Wattie-Bey advised the MRS employee that he did not know that person. The MRS employee then politely ended the call.

## II.   PROCEDURAL BACKGROUND

This action was initiated by the filing of a *pro se* complaint on September 11, 2014. (Doc. 1). The defendant filed its answer on October 8, 2014. On January 14, 2015, the defendant filed a motion for Rule 11

---

[3] Wattie-Bey testified at his deposition that the call had already been disconnected when he picked it up. (Doc. 32-1, at 20). MRS has disputed that a second call occurred, noting that there is no record of this second phone call in either its own call records or in Wattie-Bey's cellphone records, but Wattie-Bey has suggested that a missed call (*i.e.*, one that disconnected or "hung up" before it was answered) would not be recorded in either call log. This fact dispute, however, is not material to disposition of this matter, as the same outcome is reached whether MRS placed one or two "hang-up" calls to Wattie-Bey's cellphone on March 6, 2014.

sanctions against the plaintiff, which was denied without prejudice by the Court on March 5, 2015. (Doc. 14; Doc. 24).

On May 22, 2015, the defendant filed its motion for summary judgment, together with a brief in support. (Doc. 31; Doc. 32). The plaintiff filed his brief in opposition on June 15, 2015. (Doc. 33). The defendant filed its reply on June 22, 2015. (Doc. 34). The motion is ripe for disposition.

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

## IV.   DISCUSSION

The gravamen of Wattie-Bey's complaint is that he received two "hang-up" calls from defendant MRS within a one-minute period. Based on this, Wattie-Bey claims that: (1) MRS violated the TCPA by using an "automated telephone dialing system" to call his cellular telephone; (2) MRS violated the FDCPA by causing his telephone to ring repeatedly with intent to annoy, abuse, or harass him; (3) MRS violated the FDCPA by placing telephone calls to him without meaningful disclosure of the caller's identity; and (4) MRS intruded upon his solitude or seclusion by placing these two "hang-up" telephone calls.

## A. TCPA Claim

Wattie-Bey claims that MRS used an "automated telephone dialing system" to call his cellphone, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

> The TCPA prohibits use of an automatic telephone dialing system ("ATDS") to call a cell phone number. [47 U.S.C.] § 227(b)(1)(A)(iii). "The term 'automatic telephone dialing system' means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1). "This definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." [*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, 15391 n.5 (2012) (declaratory ruling)]. Reaffirming this definition in 2015, the FCC clarified that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." [*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7972 ¶ 10, 7974 ¶ 16 (2015) (declaratory ruling) [hereinafter *2015 FCC Ruling*]].
>
> Potential functionalities encompass "hardware, that *when paired* with certain software, has the capacity to store or produce numbers and dial those numbers." *Id.* at 7978 ¶ 24. The FCC specified that, "even when dialing a fixed set of numbers, equipment may nevertheless meet the autodialer definition." *Id.* at 7923 ¶ 12. In sum, "the TCPA's unqualified use of the term 'capacity' was intended to prevent circumvention of the restriction on making autodialed calls to wireless phones." *Id.* at 7973 ¶ 14.

*Cartrette v. Time Warner Cable, Inc.*, ___ F. Supp. 3d ____, 2016 WL 183483, at *6 (E.D.N.C. Jan. 14, 2016) (alterations omitted); *accord Dominquez v. Yahoo, Inc.*, ___ Fed. App'x ____, 2015 WL 6405811, at *2 (3d Cir. Oct. 23, 2015) (non-precedential opinion) ("In a series of declaratory rulings . . . the FCC . . . h[e]ld that an autodialer must be able to store or produce numbers that *themselves* are randomly or sequentially generated 'even if the autodialer is not presently used for that purpose. . . . [N]either 'present ability' nor the use of a single piece of equipment is required[,] . . . so long as the equipment is part of a 'system' that has the latent 'capacity' to place autodialed calls, the statutory definition is satisfied.") (citations and alterations omitted); *see also Cartrette*, ___ F. Supp. 3d at ____, 2016 WL 183483, at *8 ("[T]he FCC and other courts consistently have ruled that the definition of ATDS includes dialing equipment that has the capacity to store and dial numbers from a preprogrammed list without human intervention."). For example, the FCC has ruled that "predictive dialer hardware, 'when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers,'" and thus "'a predictive dialer constitutes an automatic telephone dialing system and is subject to the

TCPA's restrictions on the use of autodialers.'" *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225 (D. Mass. 2014) (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14091 (2003) (declaratory ruling) [hereinafter *2003 FCC Ruling*], and *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 ¶ 12 (2008) (declaratory ruling)).

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

MRS has made a *prima facie* showing that it is entitled to summary judgment on this claim because Wattie-Bey cannot produce admissible evidence to support his allegation that the telephone calls at issue were placed using a predictive dialer or other form of autodialer. *See* Fed. R. Civ. P. 56(c)(1)(B). MRS has provided the affidavit of Harry Albert, Jr., president of MRS, unequivocally attesting that MRS's NEC SV8100 phone system is simply not capable of making autodialed calls, and that the outgoing call(s) placed by MRS to Wattie-Bey on March 6, 2014, were made by a human employee who manually dialed Wattie-Bey's cellphone number. (Doc. 15-2). It has provided the affidavit of Larry Hinkle, the chief executive officer of the telephone vendor for MRS, unequivocally attesting

that his company sold, installed and maintains MRS's NEC SV8100 phone system, and that it has not "installed, supported or maintained any predictive dialer or power dialing software, features or functionality" on the MRS phone system, and that it has not provided or licensed MRS for the use of a predictive dialer. (Doc. 32-3). Moreover, it has provided a complete copy of its responses to the only written discovery served by Wattie-Bey, in which it unequivocally stated that its phone system was incapable of placing calls automatically, and that the telephone call(s) to Wattie-Bey's cellphone were initiated by a human employee who "had to take the [phone's] handset off of the receiver and use her finger to physically push the [number] buttons" on the phone to dial Wattie-Bey's cellphone number. (Doc. 32-2, at 4–6). Wattie-Bey did not take any depositions in this case.

The movant's *prima facie* showing having been made, the burden has shifted to the plaintiff to demonstrate the existence of a genuine dispute of material fact. Wattie-Bey has failed to meet this burden, citing no competent evidence to rebut that cited by the defendant.

First, Wattie-Bey has pointed to an article published on the internet in June 2011 reporting that a non-party mortgage banking firm with no

apparent relation to MRS or this case had adopted the same voice-over-internet-protocol multi-line telephone product, NEC SV8100, for its call center operations. (Doc. 16-2, at 1–4). In that article, it is explained that one reason the SV8100 was chosen was its ability to be integrated with the non-party firm's existing predictive dialer hardware. (*Id.*). Wattie-Bey appears to infer from this article that, because the non-party firm's phone system was capable of predictive dialing, MRS's phone system is similarly capable of predictive dialing, and thus must be an ATDS. But even setting aside the obvious authentication and hearsay objections that would prevent this document from being admissible at trial, it is clear on the face of this document that the phone system described in the article consisted of an SV8100 linked to a *separate piece of hardware* that provided a predictive dialing function, which does not demonstrate that the standalone SV8100 phone system used by MRS was "hardware, when paired with certain *software*, [that] has the capacity to store or produce numbers and dial those numbers." *See 2003 FCC Ruling* at 14091 ¶ 131 (emphasis added); *see also 2015 FCC Ruling* at 7978 ¶ 24; *Cartrette*, 2016 WL 183483, at *6.

Second, Wattie-Bey has pointed to an unauthenticated excerpt from

an "SV8100 Programming Manual," which he apparently obtained from the internet. (Doc. 16-2, at 7–8). Wattie-Bey contends that this excerpt demonstrates that the MRS phone system is *capable* of automatically dialing, and thus, as a matter of law, it is an ATDS under the TCPA. MRS did not produce the document—indeed, Wattie-Bey does not appear to have requested the production of *any* documents by MRS in this case—nor have they admitted its authenticity or its applicability to the phone system used by MRS. But even setting aside evidentiary objections, it is clear from the face of the document that it does not describe a phone system with "capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Davis*, 36 F. Supp. 3d at 225; *2003 FCC Ruling* at 14091. But rather, the "repeat dial" feature described in this excerpt simply redials a *single* phone number repeatedly, with human intervention necessary to dial any other numbers. (*See* Doc. 16-2, at 7–8).

Accordingly, it is recommended that summary judgment be granted in favor of MRS with respect to Wattie-Bey's TCPA claim under 47 U.S.C. § 227(b)(1)(A)(iii).

## B. FDCPA Claims

In his complaint, Wattie-Bey claimed that MRS caused his telephone to ring repeatedly with intent to annoy, abuse, or harass him, in violation of 15 U.S.C. § 1692d(5), and placed telephone calls to him without meaningful disclosure of the caller's identity, in violation of 15 U.S.C. § 1692d(6). In his brief in opposition to MRS's motion for summary judgment, he appears to shift his theory of liability, claiming that the two "hang-up" phone calls placed by MRS were communications with a person other than the consumer for the purpose of acquiring location information about the consumer, and the MRS employee placing those calls failed to properly identify herself, in violation of 15 U.S.C. § 1692b(1).

### 1. Causing a telephone to ring repeatedly

Section 1692d of the FDCPA forbids a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute includes a non-exhaustive list of conduct that violates this provision of the FDCPA, including "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

> "For the purposes of the FDCPA, continuously means 'making a series of telephone calls, one right after the other,' and repeatedly means 'calling with excessive frequency under the circumstances.' Courts have used a number of different factors to infer whether a debt collector acted with the requisite intent, primarily focusing on the frequency, pattern and substance of the calls."

*Kromelbein v. Envision Payment Solutions, Inc.*, Civil Action No. 3:11-CV-1598, 2013 WL 3947109, at *6 (M.D. Pa. Aug. 1, 2013) (citations omitted); *see also Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 601 (E.D. Pa. 2014) (quoting *Kromelbein*). "Although a court may consider the 'frequency, persistence, and volume of the telephone calls' to determine intent, the mere fact that a call is unwelcome is 'insufficient to constitute a violation of the FDCPA.'" *Hicks v. America's Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 515 (S.D. Ohio 2011).

Here, MRS placed two "hang-up" telephone calls to Wattie-Bey's cellphone at most, within the space of a one-minute period. One minute after the second call, Wattie-Bey placed a return call to MRS at the number displayed by his caller ID function. In a conversation that lasted less than a minute, an MRS employee determined that Wattie-Bey was not the person whom MRS was seeking to contact, that the number MRS had been provided was incorrect, and that Wattie-Bey did not have any

location or contact information about the person to whom MRS sought to speak. The call was ended politely, and MRS placed no further calls to Wattie-Bey's cellphone number. Based on these undisputed facts of record, viewed in the light most favorable to the plaintiff, no reasonable jury could conclude that these two isolated telephone calls have the natural consequence of harassing, oppressing, or abusing Wattie-Bey as recipient of the calls, nor that MRS acted with the requisite intent to annoy, abuse, or harass him. *See Kromelbein*, 2013 WL 3947109, at *4 ("[C]ourts will usually only grant summary judgment on this question if 'the conduct at issue unequivocally has—or does not have—the natural consequence of harassing, oppressing, or abusing the consumer as a matter of law.' . . . The same is true for the question of intent to annoy, abuse, or harass."); *cf. id.* at *1, *6 (denying summary judgment where debt collector called plaintiff forty-five times within a two-month period, and left insulting messages); *Johns*, 76 F. Supp. 3d at 601 (noting other decisions denying summary judgment where a debt collector called nine or more times during a thirty-day period and where a debt collector called fifty times over a three-month period); *Hicks*, 816 F. Supp. 2d at 515 (denying summary judgment where debt collector called 21 times over three-month period).

Accordingly, it is recommended that summary judgment be granted in favor of MRS with respect to Wattie-Bey's FDCPA claim under 15 U.S.C. § 1692d(5).

### 2. Failure to meaningfully disclose the caller's identity

Wattie-Bey also claims that these two "hang-up" calls constituted "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). But MRS allowed an accurate phone number to appear on Wattie-Bey's caller ID. Indeed, Wattie-Bey used that number to return the call and speak with an MRS employee within minutes of receiving the first "hang-up" call. Based on these undisputed facts of record, viewed in the light most favorable to the plaintiff, no reasonable jury could conclude that MRS failed to meaningfully disclose its identity when it placed the two "hang-up" calls to Wattie-Bey. *See Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 702–03 (D. Minn. 2012) (noting that causing false information to appear on caller ID violates § 1692d(6), whereas allowing a true phone number to appear on caller ID does not); *see also Hicks*, 816 F. Supp. 2d at 516 (debt collector's failure to leave messages for missed calls did not violate § 1692d(6)).

Accordingly, it is recommended that summary judgment be granted in favor of MRS with respect to Wattie-Bey's FDCPA claim under 15 U.S.C. § 1692d(6).

### 3.  Failure to identify the caller to a third person

In his summary judgment opposition brief, Wattie-Bey has suggested an additional theory of liability, claiming that the two "hang-up" calls placed by MRS were communications with a person other than the consumer for the purpose of location information about the consumer, and that the MRS employee placing those calls failed to properly identify herself, in violation of 15 U.S.C. § 1692b(1).

"[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 604 (M.D. Pa. 2013) (quoting another source) (brackets in original). "Federal pleading standards do not allow a party to raise new claims at the summary judgment stage. Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." *Dewees v. Haste*, 620 F. Supp. 2d 625, 635 n.7 (M.D. Pa. 2009) (ellipsis and internal quotation marks omitted). "A

plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008) (internal quotation marks omitted).

Nevertheless, this newly asserted claim under § 1692b(1) is entirely without merit. Under 15 U.S.C. §§ 1692b and 1692c, a debt collector generally may only communicate with a third party to acquire location information about the debtor/consumer. *See* 15 U.S.C. § 1692c(b) ("Except as provided in section 1692b of this title, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer . . . ."); *see also id.* § 1692b. Under § 1692b, a debt collector communicating with a third party must "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer." *Id.* § 1692b(1). Wattie-Bey contends that the two "hang-up" calls violated § 1692b(1) because they constitute communication with a third person under § 1692b and the caller failed to identify herself as required by § 1692b(1). But under the FDCPA, "[t]he term 'communication' means the conveying of information regarding a debt directly or indirectly to any

person through any medium." *Id.* § 1692a(2). "Th[is] statutory definition does not include messages or communications that do not impart (or are not at least intended to impart) information about a debt." *Evankavitch v. Green Tree Servicing, LLC*, 979 F. Supp. 2d 535, 541 (M.D. Pa. 2013). The two "hang-up" calls at issue here imparted no information about a debt, and thus they were not "communications" under the FDCPA subject to the disclosure requirements set forth in § 1692b. *See id.* at 542 (finding that telephone messages left with third parties by a debt collector simply requesting that the consumer call it back were not "communications" under the FDCPA).

Accordingly, it is recommended that summary judgment be granted in favor of MRS with respect to Wattie-Bey's FDCPA claim under 15 U.S.C. § 1692b(1).

## C. Intrusion Upon Seclusion Claim

Wattie-Bey has asserted a state common-law tort claim for intrusion upon seclusion, based solely upon the two "hang-up" calls placed by MRS on March 6, 2014.

> Pennsylvania has . . . adopted the definition for intrusion upon seclusion invasion of privacy set forth by the *Restatement (Second) of Torts*, § 652B:

> One who intentionally intrudes, physically or
> otherwise, upon the solitude or seclusion of another
> or his private affairs or concerns, is subject to
> liability to the other for invasion of his privacy if
> the intrusion would be highly offensive to a
> reasonable person.

> To maintain a claim for intrusion upon seclusion, a
> plaintiff must plead and prove that (1) there was an
> intentional intrusion, (2) upon the solitude or seclusion of
> the plaintiff, or his private affairs or concerns, and (3)
> that the intrusion was substantial and (4) highly
> offensive.

*Linko v. Nat'l Action Fin. Servs.*, Civil Action No. 3:CV-07-0034, 2007 WL

6882431, at *6–*7 (M.D. Pa. Oct. 29, 2007) (citations omitted).

> One way of meeting the requirement that the intrusion
> be "highly offensive to a reasonable person" is by the
> defendant's repeatedly intruding on the plaintiff at
> inconvenient times. Indeed, the Restatement explicitly
> provides that

>> there is no liability for knocking at the plaintiff's
>> door, or calling him to the telephone on one
>> occasion or even two or three, to demand payment
>> of a debt. It is only when the telephone calls are
>> repeated with such persistence and frequency as to
>> amount to a course of hounding the plaintiff, that
>> becomes a substantial burden to his existence, that
>> his privacy is invaded.

> Although the Second Restatement illustrates the tort by
> describing *persistent* intrusions upon the plaintiff's
> privacy, it is clear that the important point is not that the
> intrusions be persistent but that the intrusions should by
> one means or another—whether by persistent repetition
> or by some other aspect of the intrusion—rise to the level

- 20 -

of what a reasonable person would find "highly
offensive."

*Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474, 480 (E.D. Pa. 2007)

(citations omitted); *Linko*, 2007 WL 6882431, at *7 (quoting *Diaz*).

Here, it is undisputed that Wattie-Bey received at most two "hang-up" phone calls within the space of a minute, and that the calls ceased after he placed a return call to MRS and informed them that they had a wrong number. Even that brief, one-minute phone conversation was conducted in a professional manner, with no allegations or evidence of threats, insults, or obscene language—indeed, the parties agree that the call ended "politely" once MRS learned that it had a wrong number and Wattie-Bey did not know the person they were trying to reach. Based on the undisputed evidence of record, viewed in the light most favorable to the plaintiff, no reasonable jury could conclude that the two "hang-up" calls to Wattie-Bey's cellphone number placed by MRS on March 6, 2014, were either a substantial intrusion or highly offensive. *See Linko*, 2007 WL 6882431, at *8 (three calls, including one involving insults and obscene language, did not rise to the level of what a reasonable person would find highly offensive); *Restatement (Second) of Torts* § 652B cmt. d (1977) ("[T]here is no liability for knocking on the plaintiff's door, or calling him

to the telephone on one occasion *or even two or three*, to demand payment

of a debt.").

Accordingly, it is recommended that summary judgment be granted

in favor of MRS with respect to Wattie-Bey's common-law tort claim for

intrusion upon seclusion.

## V.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.     The defendant's motion for summary judgment (Doc. 31) be

**GRANTED**; and

2.     The Clerk be directed to enter judgment in favor of the

defendant and against the plaintiff on all counts of the complaint (Doc. 1).

Dated: March 10, 2016            *s/ Joseph F. Saporito, Jr.*
                                 **JOSEPH F. SAPORITO, JR.**
                                 **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DAVID WATTIE-BEY,

      Plaintiff,

      v.

MODERN RECOVERY
SOLUTIONS,

      Defendant.

CIVIL ACTION NO. 1:14-CV-01769

(CONNER, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated March 10, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Dated: March 10, 2016                    *s/ Joseph F. Saporito, Jr.*
                                         **JOSEPH F. SAPORITO, JR.**
                                         **United States Magistrate Judge**